

FILED
MAY 25 2007

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|   |   |
|---|---|
| HENRY KAYONGO-MALE, | CIV 04-4172 |
| Plaintiff, | |
| -vs- | MEMORANDUM OPINION AND ORDER |
| SOUTH DAKOTA STATE UNIVERSITY, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Defendant filed a Motion for Summary Judgment, Doc. 27, and a Motion for Partial Summary Judgment, Doc. 28, in this action brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2, prohibiting employment discrimination based upon race. The motions have been fully briefed. During the pretrial conference on May 21, 2007, no additional arguments were presented by counsel. For the reasons set forth below, the summary judgment motion will be granted as to Count Two of the Complaint and denied as to Count One and the partial summary judgment will be granted as to punitive damages and a 300-day limitation on back pay and denied in all other respects.

## BACKGROUND

The following are the facts viewed in the light most favorable to the Plaintiff, as the non-moving party. Plaintiff Dr. Henry Kayongo-Male ("Male") is an African American United States citizen who was born and raised in Uganda. Male is employed by the Defendant, South Dakota State University ("SDSU") in Brookings, South Dakota. He was hired by SDSU in 1986, as a nine-month assistant professor in the Department of Biology, which was later consolidated and renamed the Department of Biology/Microbiology. Male is the only African American in his department. In this

action, Male contends he was discriminated against on the basis of his race, which he claims resulted in him receiving inadequate salary increases. The salary increase at issue in this lawsuit is for the teaching year 2003 to 2004, which will be referred to herein as "fiscal year 2004". Count One in his Complaint alleges a disparate treatment theory of discrimination and Count Two alleges disparate impact.

Male received his Bachelor of Science Degree at the University of Makerere and his Masters and PhD degrees in nutritional biochemistry at Michigan State University in 1974. After graduating, Male was employed as a college professor at the University of Nairobi, Kenya, from 1974 to 1985. In 1985, Male's wife accepted a teaching position at SDSU. After the move to South Dakota, Male was unemployed for nine months, but then accepted a position as an assistant professor in SDSU's biology department in 1986. He was promoted to associate professor and then to full professor. He is also tenured.

All nine-month teaching professors at SDSU have 15 required work units. Twelve of Male's 15 work units are dedicated to teaching and the other three are devoted to service and research or scholarship. At all relevant times, Male taught the 300-level human physiology course at both SDSU and the USDSU campus in Sioux Falls, South Dakota. There are usually 250 students in Male's class at SDSU, with lectures beginning at 7:00 a.m. on Monday, Wednesday and Friday, and labs from 8:00 a.m. to 5:00 p.m. on Saturday. Students seeking more than 12 different majors in health-related professions are required to take Male's class at SDSU. The students in Male's class are upper-level students, including sophomores, juniors, seniors and some graduate students.

A web page is provided by Male to his students, from which they can download his course outline. He revises the outline each semester. In 1994, Male wrote the first edition of a lab manual for his course, entitled *Laboratory Guide to Mammalian Physiology*, which is approximately 250 pages in length. Since 1994, Male has published three editions of the manual, with the most recent being the Fourth Edition sent for publication in April 2005. Although the Fourth Edition was not completed until 2005, he was working on the Fourth Edition during fiscal year 2004.

2

Male contends it is more difficult to develop a curriculum, and to teach, a large, diverse class some of the most challenging material than to teach a much smaller homogenous class of pharmacy students or a 100- or 200-level homogeneous class. Male's colleagues teach these lower-level classes.

In addition to teaching at SDSU, Male taught the human physiology course at Lake Area Technical Institute ("Lake Area") in Watertown, South Dakota, from 1997 to 2003. He taught approximately 80 students per year. He was paid for this work, but he believes his teaching at Lake Area helped recruit students from Lake Area to SDSU. Thus, he contends he should received credit toward his service requirement for this extra work.

Male discontinued teaching at Lake Area in 2003 because he began teaching at USDSU in Sioux Falls in the accelerated nursing program. He contends teaching at USDSU was a service to SDSU because it greatly assisting in making the accelerated nursing program a success, particularly because Male's class has a lab requirement.

In May 2003, Male challenged his salary increase for fiscal year 2004. He first questioned his immediate superior, Dr. Tom Cheesbrough, about his raise for fiscal year 2004. Cheesbrough responded that there was very little money and that everyone got low raises and that everyone's raise was about the same amount as Male's raise. Due to Cheesbrough's demeanor when giving this explanation, Male began an investigation of the amount of his colleagues' salary increases. Through this investigation Male discovered that, not only had he received a much lower salary increase for fiscal year 2004, he had received the lowest or second-lowest annual salary increase in his department since 1992. He gathered the salary information and consolidated it for presentation to Carol Peterson, the Vice President for Academic Affairs at SDSU.

Male presented his research regarding faculty salary increases in his department to Peterson in May 2003. After Male inquired of Peterson's office again in August 2003, Peterson offered to raise Male's nine-month salary from $61,431 to $64,000 for fiscal year 2004, which was a 4.2%

increase. Male rejected this offer and Peterson then offered to increase Male's salary to $65,700 for fiscal year 2004, which was a 6.9% increase. Both of Peterson's offers were rejected by Male because he did not believe increasing his salary solely for fiscal year 2004 and forward would fairly compensate him for the several years of discrimination he believed he suffered as a result of consistently receiving lower salary increases than his colleagues.

The reason Male took his concerns to Peterson in 2003, was because she had resolved a similar complaint he had ten years earlier. In 1992, Male complained to Peterson that he had been given inadequate salary increases compared to his colleagues. Similar to her response to Male's complaint in 2003, Peterson provided Plaintiff with a 7.6% salary increase in 1992 to ameliorate the discrepancy. Male was satisfied with Peterson's actions in 1992.

After his attempt to resolve the above issues with SDSU failed in 2003, Male filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on October 23, 2003. On July 28, 2004, the EEOC issued Male a Notice of Right to Sue.

In support of his claims in this lawsuit, Male hired Dr. Robert K. Toutkoushian, an Associate Professor with tenure in the Department of Educational Leadership and Policy Studies at Indiana University. The majority of Dr. Toutkoushian's research is on issues relating to faculty compensation. The Court finds Dr. Toutkoushian is well-qualified to opine on the adequacy of Male's performance evaluations in comparison to his colleagues in the Department of Biology/Microbiology at SDSU. He prepared extensive reports regarding Male's performance ratings and merit salary increases while employed by SDSU. The first report focused on SDSU's faculty salary system in general and on Male's teaching performance. A supplemental report focused on the second and third aspects of SDSU's faculty merit-based salary system, which are service and research or scholarship.

In his first report, Dr. Toutkoushian reached several conclusions regarding the salary system and Male's teaching performance. The first is that the merit pay system used by SDSU is based on

subjective assessments of faculty productivity in teaching, service, and research or scholarship. But as Dr. Toutkoushian admitted in his deposition, it is difficult to develop a purely objective and fair compensation system due to the nature of college professors' varied duties and the inability to objectively measure aspects of their performance, such as effectiveness at teaching, quality of publications, and contribution to the professors' areas of study.

The second conclusion reached by Dr. Toutkoushian is that:

> [I]t is well documented that Dr. Kayongo-Male was given performance ratings in teaching, research, and service that were notably lower than most of his colleagues in the Department. Dr. Kayongo-Male's performance ratings were among the lowest in his Department despite the fact that he has been recognized by the Department and the University for his teaching ability and his average student evaluations are comparable to those of his senior colleagues who were given higher ratings."

(Toutkoushian Depo., Ex. 2, at 3.)

Dr. Toutkoushian's third conclusion, that Male's salary increases were among the lowest in his Department, relates to the second conclusion because lower performance ratings result in lower salary increases under SDSU's faculty compensation system.

The fourth conclusion in Dr. Toutkoushian's first report is that:

> [T]he available evidence on Dr. Kayongo-Male's teaching performance strongly suggests that his effectiveness as a teacher is comparable to that for his senior colleagues in the Department. His average student evaluations along several dimensions are above the norms for comparative 4-year institutions. The only area where his evaluations are below the norm is for Communications, which is not unusual given that Dr. Kayongo-Male is not a native-born American. The fact that he has still managed to be rated as an exceptional instructor by students at SDSU is a testament to his true teaching performance.

(Toutkoushian Depo., Ex. 2, at 4.)

Several graphs and detailed analysis are presented in Dr. Toutkoushian's report to reach the above conclusions. There is no dispute that Male's merit-based salary increases have been significantly below his colleagues for several years.

## DISCUSSION

Summary judgment is appropriate if the moving party establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). In reviewing a motion for summary judgment, this Court views the evidence in a light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial.'" *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (quoting Fed.R.Civ.P. 56(e)). The Eighth Circuit has "repeatedly cautioned that summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based. Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990 (8th Cir. 1998) (citations omitted). It is also clear, however, that "[t]o survive a motion for summary judgment, the nonmoving party must 'substantiate his allegations with sufficient probative evidence that would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003) (quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)).

### A.  SDSU's Motion for Summary Judgment
#### 1. Disparate Treatment

Title VII makes it unlawful for an employer to discriminate against an employee on the basis of, among other things, the individual's race. *See* 42 U.S.C. §§ 2000e-2(a)(1). When a plaintiff is not able to produce direct evidence of race discrimination, the Court applies the burden-shifting analysis of *McDonnell Douglas*, which first requires the plaintiff to demonstrate a prima facie case

6

of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). There is no direct evidence of race discrimination in this case. Thus, the *McDonnell Douglas* analysis applies.

If plaintiff establishes a prima facie case, the burden then shifts to the employer to advance a legitimate, nondiscriminatory reason for the adverse employment action. *See Fast v. Southern Union Co., Inc.*, 149 F.3d 885, 890 (8th Cir. 1998). "'The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence.'" *Davis v. KARK-TV, Inc.*, 421 F.3d 699, 705 (8th Cir. 2005) (quoting *Floyd v. Mo. Dept. of Soc. Servs., Div. of Family Servs.*, 188 F.3d 932, 936 (8th Cir. 1999)). If the employer articulates such a reason, "the burden shifts to [the plaintiff] to produce evidence sufficient to create a genuine issue of material fact whether [the employer's] proffered nondiscriminatory reason was a pretext for discrimination." *Id.* That is, Plaintiff "must produce 'some additional evidence beyond the elements of the prima facie case' that would allow a rational jury to reject [the employer's] proffered reasons as a mere pretext for discrimination." *Lidge-Myrtil v. Deere & Co.*, 49 F.3d 1308, 1311 (8th Cir. 1995) (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 959 (8th Cir. 1995)); *see Breeding v. Arthur J. Gallagher and Co.*, 164 F.3d 1151, 1157 (8th Cir. 1999). Plaintiff may show pretext, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). The Plaintiff carries at all times the burden of proving that the claimed inadequate salary increase for fiscal year 2004 was motivated by intentional discrimination. *See Fast*, 149 F.3d at 890.

To establish a prima facie case, Male must show that: (1) he is a member of a protected class; (2) he met the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) similarly situated employees that were not members of the protected class were treated differently. *See Davis*, 421 F.3d at 704. Male satisfies the first element because he is African American. There is no dispute that Male has met the legitimate expectations of his employer as he has been promoted to full professor with tenure and has always received evaluations of at least satisfactory. He also received the F.O. Butler Award for Outstanding Instruction for his teaching

7

performance before he was promoted to a full professor in 1996. There is abundant evidence in the record that Male suffered an adverse employment action in the form of inadequate salary increases. When Male challenged his fiscal year 2004 salary increase and presented evidence of the inadequacy of his salary compared to his colleagues, Peterson, the Vice President for Academic Affairs, twice offered to raise his salary. Male presented to Peterson written comparisons of his salary and performance to several similarly situated professors at SDSU when he first challenged his fiscal year 2004 salary increase. Moreover, Dr. Toutkoushian has presented additional evidence that Male was treated differently as to performance evaluations and the associated merit-based salary increases than similarly situated professors at SDSU. Male has carried his burden to establish a prima facie case of race discrimination.

SDSU's proffered legitimate, nondiscriminatory reason for Male's undeniable significant lower salary increases is that Male has not performed as well as his colleagues in the Department of Biology/Microbiology. SDSU has met its burden of articulating a nondiscriminatory reason for Male's lower salary increases.

The burden then shifts back to Male to show there is sufficient evidence in the record to create a genuine issue of material fact that SDSU's proffered nondiscriminatory reason was a pretext for race discrimination. The Court finds Male has met this burden by showing SDSU's reason is unworthy of credence. *See Burdine*, 450 U.S. at 256. The only reason offered by SDSU for Male's significantly lower salary increases for several years, including the fiscal year 2004 salary increase, is that Male has not performed as well as his colleagues. This proffered reason is in direct conflict with Dr. Cheesbrough's written evaluation of Male's performance for calendar year 2002, dated February 26, 2003, in which he stated, "Dr. Kayongo Male is one of the best teachers in the department and an active supporter of the department. Therefore, where appropriate, I recommend consideration for augmentation monies if they are available." (Doc. 32, Ex. C at 9.) Cheesbrough's written evaluation of Male's teaching and academic advising skills was that:

> Dr. Kayongo-Male exceeded expectations for teaching as evidenced by the following accomplishments. Henry is one of the most highly rated instructors in the department; his student evaluations and the high demand for his classes show the

8

quality of his teaching efforts. He has actively supported the university's Lead Forward Land-Grant goal of educational outreach by volunteering to teach Mammalian Physiology at USDSU. Henry also promoted the goal of fostering critical thinking by mentoring undergraduate teaching interns in Mammalian Physiology. This effort also serves to build a sense of community among our undergraduates that is essential for retaining students. Dr. Kayongo-Male has promoted the departmental goal of enhancing instruction through the development of new demonstrations and experiments. Henry takes his role as mentor/advisor very seriously by investing significant time in helping students with their careers.

(Doc. 32, Ex. C at 8.) Cheesbrough further stated that Male met expectations for research, scholarship and service. (*Id.* at 8 to 9.)

In his written report dated July 17, 2006, Dr. Toutkoushian examined Male's teaching performance in comparison to nine of his colleagues for calendar year 2004. (Doc. 49, Ex. II, Depo. Ex. 2 at 43-53.) Dr. Toutkoushian prepared a supplemental report, dated August 5, 2006, in which he provided a more detailed comparison of the research/scholarship and service activities of Male and his colleagues. Dr. Toutkoushian's reports and the other written evaluations of Male's performance at SDSU do not support SDSU's argument that Male was appropriately given the lowest or second to lowest salary increases for several years, including fiscal year 2004, based upon his performance in the Department of Biology/Microbiology. The record contains abundant evidence that Male performed as well as, and in several cases better than, his colleagues at SDSU. As to his teaching performance, his student evaluations were higher than several of his colleagues in several areas. He taught a challenging class to approximately 250 upper-level students per semester, including both lecture and labs. As to Male's research and scholarship activities, Dr. Toutkoushian concluded that given the small percentage of time Male was expected to devote to research and scholarship compared to his colleagues, Male's performance did not justify his performance rating, which was two to three levels below his colleagues' ratings for these activities. (Doc. 49, Ex. II, Depo. Ex.3 at 18.) The third aspect to SDSU's merit-pay system is service. Dr. Toutkoushian compared Male's service activities to his colleagues and concluded that, "[i]t is not clear how the administrative supervisor could review the list of service activities shown in Table 7

9

[in Dr. Toutkoushian's report] and conclusively and objectively determine Dr. Kayongo-Male warranted a substantially lower rating than all of his senior colleagues." (*Id.* at 23.)

The Eighth Circuit recognized that, "[p]robably the most commonly employed method of demonstrating that an employer's explanation is pretextual is to show that similarly situated persons of a different race or sex received more favorable treatment." *Cherry v. Ritenour Sch. Dist.*, 361 F.3d 474, 479 (8th Cir. 2004) (quotation marks and citations omitted). "The test to determine whether employees are similarly situated to warrant a comparison to a plaintiff is a rigorous one." *Id.* (quotation marks and citations omitted). "Specifically, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* (quotation marks and citations omitted). There is no dispute that Male and the other full professors in his department were supervised by Cheesbrough and were subject to the same standards for salary increases. In his written reports, Dr. Toutkoushian meticulously compared Male to the other full professors in the Department of Biology/Microbiology in all three categories on which they are evaluated by Cheesbrough. Male has met his burden of establishing that he was similarly situated in all relevant respects to the full professors he was compared to in Dr. Toutkoushian's reports. Finally, there is no dispute that Male received significantly lower salary increases than these similarly situated professors.

In addition to the above evidence, the Court finds it significant that Peterson twice offered to raise Male's salary when he presented evidence to her of the significant disparity in his salary increases compared to his colleagues. Peterson's offers to raise Male's salary do not support SDSU's argument in this lawsuit that Male was adequately compensated for fiscal year 2004.

Based upon the above discussion, the Court will deny SDSU's summary judgment motion as to Male's disparate treatment claim under Count One of his Complaint. Male established a prima facie case and he has shown there is sufficient evidence in the record to create a genuine issue of

material fact that SDSU's proffered nondiscriminatory reason was a pretext for race discrimination.

### 2. Disparate Impact

The burden-shifting analysis, as it applies to Male's claim of disparate impact in Count Two of his Complaint, was described by the Eighth Circuit:

> To establish a prima facie case on a disparate impact claim, plaintiffs must show that a facially neutral employment practice has a significantly adverse impact on a protected group. Once that showing is made, the burden shifts to the employer to demonstrate that the practice has a manifest relationship to the employment in question and is justified by business necessity. If the employer meets this burden, the plaintiffs may then show that other practices, which lack a similarly discriminatory effect, would satisfy the employer's legitimate interests. Such a showing would be evidence that the employer was using the practice as a mere pretext for discrimination.

*Easley v. Anheuser-Busch, Inc.*, 758 F.2d 251, 256 n. 7 (8th Cir. 1985); *see Allen v. Entergy Corp.*, 181 F.3d 902, 904 (8th Cir. 1999) (same).

In this case, Male has not established that SDSU's merit-based faculty compensation system has had a significantly adverse impact on African Americans. There is no evidence in the record that this system has had an adverse impact on any African American faculty member at SDSU, except Male. Male claims that Cheesbrough discriminated against him on the basis of his race while using this compensation system. But that alleged intentionally discriminatory conduct does not save Male's disparate impact claim from dismissal.

### B. Defendants' Motion for Partial Summary Judgment

SDSU filed a separate motion, Doc. 28, requesting that partial summary judgment be entered in its favor, to the effect that: (1) Male's claim for back pay is limited to 300 days before he filed his EEOC complaint on October 29, 2003; (2) Male is not entitled to compensatory damages under 42 U.S.C. § 1981a; and (3) Male cannot recover punitive damages against a state agency. Male contends that the first request is premature and it should be addressed in motions in limine. As to the second request, Male points out that he is seeking compensatory damages under 42 U.S.C. §

11

1981a, rather than 42 U.S.C. § 1981(a). In his response brief, Male concedes he cannot recover punitive damages in this action.

The request for summary judgment that limits Male's recovery of back pay to 300 days before Male filed his EEOC complaint and paychecks received after that date will be granted. The Supreme Court explained that "when considering a discriminatory salary structure, ... although the salary discrimination began prior to the date that the act was actionable under Title VII, '[e]ach week's paycheck that deliver[ed] less to a black than to a similarly situated white is a wrong actionable under Title VII ....'" *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002) (quoting *Bazemore v. Friday*, 478 U.S. 385, 395 (1986)). Thus, each paycheck Male received was a discrete act. *See Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 988 (8th Cir. 2003). The Second Circuit Court of Appeals held that a plaintiff employee's recovery for salary discrimination "would be limited to those paychecks he received within the relevant statute of limitations period, i.e. paychecks received within 300 days prior to March 24, 1994, [the date of his EEOC complaint], or paychecks received after that date." *Forsyth v. Federation Employment and Guidance Serv.*, 409 F.3d 565, 573 (2d Cir. 2005).

SDSU did not respond to Male's argument that compensatory damages are allowed under 42 U.S.C. § 1981a(b). It appears SDSU confused 42 U.S.C. § 1981(a), with 42 U.S.C. § 1981a in making the argument that Male cannot recover compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. Accordingly, SDSU's motion will be denied on this ground.

Male concedes punitive damages are not recoverable against SDSU, as a governmental agency. *See* 42 U.S.C. § 1981a(b)(1). Thus, SDSU's motion will be granted on this ground. Accordingly,

12

IT IS ORDERED:

1. That Defendants' Motion for Summary Judgment, Doc. 27, is granted on Count Two of the Complaint and is denied on Count One.

2. That Defendants' Motion for Partial Summary Judgment, Doc. 28, is granted as to Plaintiff's prayer for punitive damages and as to Plaintiff's recovery of back pay being limited to 300 days prior to filing his EEOC complaint and paychecks received after that date. The motion is denied in all other respects.

Dated this 25th day of May, 2007.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
DEPUTY